UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **17-cr-230 (RJL)** |
| | : | |
| **CEDRIC CARR,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. The defendant, Cedric Carr, admitted as part of a global plea to possessing a firearm in violation of the conditions of his supervised release. For the reasons herein, the United States requests that the Court revoke the defendant's supervised release and sentence him to a period of 8 months' incarceration, the bottom of the Guidelines Range for a Class B violation pursuant to the plea agreement's cap on the government's allocution, and run that sentence consecutive to defendant's 33 month sentence in 24-CR-497. Given that defendant was sentenced to 36 months supervision in 24-CR-497, the United States does not request a further period of supervised release in this case.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

   **A.      This Case**

On October 30, 2017, defendant Cedric Carr walked into the Imperial Wine and Spirits Store located at 620 12th Street Northwest, Washington DC. ECF No. 17 (Statement of Offense). He pointed a silver semi-automatic pistol at the store employee and demanded money. *Id.* After the employee put his wallet and iPhone on the counter, Carr grabbed the phone and asked, "Where is the money? Where's the safe?" *Id.* When the employee opened the cash register drawers, Carr

1

reached in and took cash from one of the registers. *Id.* Carr left the store with the money and a box of Patron tequila. When officers arrested him the following day, Carr had in his possession the same gun he used in the robbery, a Jimenez Arms 9mm handgun with five cartridges of ammunition. *Id.*

On or about November 28, 2017, a grand jury indicted Carr on five counts: Hobbs Act Robbery in violation of 18 U.S.C. § 1951, Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to a Crime of Violence or a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1)(A)(ii), two counts of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1), and Simple Possession of a Controlled Substance (Cocaine), in violation of 21 U.S.C. § 844(a)). On July 12, 2018, Carr pled guilty to Count Two, Using, Carrying, Possessing and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The remaining counts of the Indictment were dismissed as part of the plea agreement.

On October 12, 2018, this Court sentenced Carr to 84 months incarceration (the mandatory minimum and Guideline sentence), to be followed by 60 months supervised release. ECF No. 25. At the time of sentence, Carr was Criminal History Category III. ECF No. 19 (PSR) ¶ 105, ECF No. 35 at 2. Carr was released from his sentence of incarceration to begin serving supervised release on November 14, 2023; his term was set to expire on November 13, 2028. ECF No. 35 at 1.

    B.    <u>**Violation Conduct**</u>

In the morning of October 27, 2024, defendant Cedric Carr was drinking from an open bottle of red wine (Sutter Home) in the plaza outside the entrance to the Gallery Place-Chinatown

Metro center on corner of F and 7th Streets, NW in Washington, D.C. *See* Image 1. At about 8:27 a.m., two officers with Metropolitan Transit Police Department ("MTPD") approached Carr and saw the open bottle. Image 2, below.



*Image 1: Carr drinking from a bottle of wine approximately one minute before officers approached him*



*Image 2: Still image from body-worn camera showing Carr holding the open bottle (red)*

Officers took the bottle from Carr, placed it on the ground, and asked Carr for ID. In response, Carr produced a bank card with his name on it. Carr then immediately turned and bladed his body away from the officers, facing the wall, without being asked to do so. Immediately after doing so, Carr reached with his right hand towards his waistband. See Statement of Offense, ECF No. 9, 24cr497 at 2; *see also* Image 3, below.



*Image 3: Carr turns his body away from the officers towards the wall and reached towards his waistband with his right hand*

One of the officers immediately secured Carr's right hand. Images 4 and 5, below. The officer felt a hard object and saw a hand grip of a handgun peeking from Carr's waistband, announced that Carr had a gun, and—together with the other officer—placed Carr in cuffs. The officer then pulled a black handgun from Carr's waistband. *See* Images 6 and 7, below.



*Image 4 and 5: One of the officers intercepts Carr's arm*

5



*Images 6 and 7: The officer then pulls out a gun from Carr's waistband*

The gun was identified to be a Smith and Wesson M&P 40, .40 caliber semiautomatic pistol. Image 8, below. The gun had one round chambered and eight (8) additional rounds loaded in a 14-round capacity magazine; the gun had been reported stolen by the Atlanta Police Department. Officers found an additional .40 caliber round in Carr's right cargo pocket.



*Image 8: Photograph of the Smith and Wesson M&P 40 and .40 caliber ammunition*

6

    **C.**    **Procedural History**

On November 6, 2024, a federal grand jury returned an indictment charging Carr with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime in violation of Title 18, United States Code, Section 922(g)(1). *United States v. Carr*, 24CR497, ECF No. 1. In this case, Probation filed a petition alleging that Carr violated the mandatory condition he not commit another federal, state, or local crime, as well as the standard condition that he not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon. ECF No. 35.

On February 20, 2025, Carr resolved both cases pursuant to a global plea agreement, pleading guilty to the 18 U.S.C. § 922(g)(1) count in 24-CR-497 and admitting to violation 2 (the gun possession) in this case. In both cases, the Government agreed to cap its allocution to the low end of the Guidelines Range. On October 3, 2025, Judge Contreras sentenced Carr to 33 months incarceration, followed by 36 months supervised release.

**II.**    **LEGAL STANDARD**

Revocation is mandatory for possessing a firearm in violation of the terms of supervised release. 18 U.S.C. § 3583(g)(2); U.S.S.G. § 7C1.5, app. note 2. Under the Guidelines, any period of incarceration should generally be consecutive to any other sentence, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release. U.S.S.G. § 7C1.4(b). The Court may re-impose a sentence of supervised release, up to the term authorized for the original offense less any imprisonment imposed on revocation. 18 U.S.C. § 3583(h); U.S.S.G. §7C1.4(c). Because Carr was originally convicted of a Class A felony, the Court may impose a period up to 60 months incarceration and 60 months supervised release, minus any term of imprisonment imposed.

The Supreme Court has not resolved whether the length of sentence imposed for mandatory revocation pursuant to 18 U.S.C. § 3585(g) should be limited to the factors set forth in 18 U.S.C. § 3583(e) (section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)). *Esteras v. United States*, 606 U.S. 185, 202 (2025) (declining to resolve whether § 3583(g) and (e) should be read co-terminously). The Guidelines indicate that they should, and so the Government will address those only factors. *See* U.S.S.G. § 7C1.4(a) ("[i]n the case of a revocation of supervised release, the court shall conduct an individualized assessment to determine the appropriate length of the term of imprisonment, given the recommended range of imprisonment set forth in §7C1.5"), app. n.1 ("When making an individualized assessment under subsection (a), the factors to be considered are the same as the factors considered in determining whether to impose a term of supervised release.")

### III.   ARGUMENT

The United States requests that the Court sentence Carr to 8 months' incarceration, pursuant to the allocation cap in the parties' plea agreement, to be run consecutive to his sentence on his substantive offense.

### A.   § 3553(a)(1): Nature and Circumstances of the Offense

The nature and circumstances of Carr's original offense were extremely troubling. Carr robbed a liquor store at gunpoint, stealing cash from the register and taking a bottle of Tequila

with him.  Carr's actions very likely placed the store clerk in fear of grave bodily harm and placed his own pecuniary gain over the safety of himself and those around him.

      **B.**      **§ 3553(a)(1): History and Characteristics of the Defendant**

The history and characteristics of the defendant also show a need for a sentence of 8 months' incarceration.

Carr has a lengthy criminal history stretching back almost 18 years.  Excluding the instant offenses, they do not appear to be violent, however; many of Carr's convictions are for thefts.  *See, e.g.,* ECF No. 19 ¶¶ 30–33, 35–37, 104.  Carr has had significant problems with substance and alcohol abuse, but both the offense (robbing a liquor store) and violation conduct (drinking in public with a stolen gun) seem to indicate that his alcohol abuse is co-linked with, and possibly a driver of, his criminal activity.  Carr also committed this violation—serious new criminal conduct—less than a year into his supervised release on this case.

Carr's ongoing struggles with addiction mitigate towards a sentence of the bottom of the Guidelines.  However, his inability to conform his conduct to the basic tenets of supervised release in this case and his repeated recidivism over a decade indicate that a sentence of 8 months is appropriate.

      **C.**      **§ 3553(a)(2)(B), (C), (D): Deterrence, the Need to Protect the Public, and to Provide the Defendant Appropriate Programming**

Troublingly, the Court's 84-month sentence in this case does not appear to have deterred Carr from possessing a stolen firearm.  While Judge Contreas has imposed sentence on that substantive criminal offense, this Court should fashion a sentence to specifically deters Carr by imposing serious consequences for possessing guns while on supervised release.  A further period

9

of incarceration run consecutive to that sentence will give Carr additional reason to reconsider the next time he considers engaging in conduct that violates his supervised release

There is also need to protect the public from Carr's conduct. This violation also involved his possession of a gun in public, while drinking, by the Chinatown metro, on a weekend morning. Especially given his past track record of using a gun and his disregard of conditions of supervised release, an additional period of incarceration will guarantee the public's protection during that time. It will also require Carr to remain sober for the additional period, giving him time to reflect and pursue appropriate programming in the BOP.

### D.     § 3553(a)(4): The Guidelines

The parties agree that Carr's conduct constitutes a Class B violation and that he was Criminal History Category III at the time of his sentence in this case. Accordingly, the Guidelines Range is between 8 and 14 months. The Guidelines already contemplate that a defendant may be sentenced on a new substantive offense and nonetheless recommend a consecutive sentence. U.S.S.G § 7C1.4(b). Given the conduct here and Carr's lengthy criminal history—including his brandishing of a gun that led to the supervision in this case—the Guidelines appropriately reflect the seriousness of his supervised release violation and a sentence at the bottom of the range is appropriate.

## IV.     CONCLUSION

For the foregoing reasons, the government requests that the Court sentence Carr to 8 months' incarceration on his violation of supervised release, run consecutive to his sentence in 24-CR-497.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

     /s/ *Michael L. Barclay*
MICHAEL L. BARCLAY
Assistant United States Attorney
N.Y. Bar Reg. No. 5441423
U.S. Attorney's Office for the District of Columbia
601 D Street, NW
Washington, D.C. 20001
(202) 252-7669
Michael.Barclay@usdoj.gov
